IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| PHILIPPE PADIEU, #1579307 | § | |
| VS. | § | CIVIL ACTION NO. 6:20cv631 |
| LISA PHILIPS, ET AL. | § | |

REPORT AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE

Plaintiff Philippe Padieu, a prisoner confined at the Beto Unit within the Texas Department of Criminal Justice (TDCJ), proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit complaining of alleged violations of his constitutional rights. The case was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

The Court previously dismissed Plaintiff's claims concerning the alleged dangerousness of Tenofovir DF 300, one of his prescriptions, for Plaintiff's failure to exhaust his required administrative remedies, (Dkt. #58). Accordingly, Plaintiff's claims concerning the dangerousness of that medication—including his allegations that Defendants are deliberately indifferent to his serious medical needs by prescribing a dangerous medication—are not before the Court and will not be addressed.

The remaining claim in this lawsuit concerns Plaintiff's claim that Defendants acted with deliberate indifference to his serious needs by delaying his HIV medication for eleven days. Plaintiff's motion for summary judgment, (Dkt. #70), Defendants' motion for summary judgment, (Dkt. #72), and Plaintiff's response, (Dkt. #79) are now before the Court and ripe for review. For

reasons explained below, the Court recommends that Defendants' motion for summary judgment be granted and Plaintiff's remaining claims be dismissed with prejudice.

## I. Plaintiff's Amended Complaint

Plaintiff's amended complaint, (Dkt. #25), is the operative pleading in this lawsuit. An amended complaint entirely supersedes and takes the place of an original complaint unless the amended complaint specifically refers to an adopts or incorporates by reference the earlier pleading. *See Clark v. Tarrant Cnty., Tx.*, 798 F.2d 736, 740 (5th Cir. 1986).

In his amended complaint, Plaintiff explains that in June 2020, his HIV prescription was not renewed—and that he went without treatment for HIV for eleven days. On June 14, 2020, his "medication and treatment" expired and needed to be refilled by Defendants at the Beto Unit. Defendants failed to do so, and "did not fix the situation"—thereby denying, delaying, and interfering with his prescribed medication and treatment, (Dkt. #25, pg. 3). Plaintiff states that Defendants refilled his Tenofovir DF 300 medication on June 24, 2020, but that he was without his prescribed medication for eleven days. *Id*. He claims that the lack of medication for those eleven days altered his CD-4 count and permanently harmed his kidney and bones, constituting deliberate indifference to his serious medical needs.

Plaintiff seeks $50,000 in compensatory damages from each Defendant and $50,000 in punitive damages from each Defendant. He also seeks both "pre-judgment and post-judgment interest at the maximum allowable rate on any amount awarded" to him as well as court costs.

## II. Motions for Summary Judgment

Plaintiff, in his motion for summary judgment, insists that Defendants refused to renew his HIV medication for eleven days and prescribed the dangerous Tenofovir DF 300. He states that the delay changed his CD-4 viral load count to "detectible," meaning he could then spread the

virus, and caused permanent damage to his kidneys and bones. He further argues that Defendants acted in concert as a matter of policy to deny/delay his HIV medication for eleven days.

Defendants maintain that there is no disputed issue of material fact in this case. Specifically, they argue that there is no evidence to support Plaintiff's claim that Defendants were deliberately indifferent to his serious medical needs, that any delay in Plaintiff receiving his medication was a result of his refusal, and that there is no evidence of substantial harm stemming from any delay. Defendants also claim that they are entitled to qualified immunity.

**III. Plaintiff's Response to Defendants' Motion**

Plaintiff asserts that Defendants' motion should be rejected, and that Defendants are not entitled to qualified immunity. Citing *Murphy v. Bray*, he insists that courts have held that the failure to prescribe HIV medications over a nine-day period "was declared deliberate indifference," (Dkt. #79, pg. 1). Plaintiff further claims that Defendants are liable "as a result of a motivating municipal policy or custom"—namely, creating a "new sick call request procedure to delay treatment/refill of HIV medication for 5 extra days." *Id*. at pg. 6. He maintains that Defendants knew "full well" that delaying HIV medications for eleven days "could/would alter[] change[] the Plaintiff's CD-4 count to 'detectible' and cause permanent kidney and bone damages." *Id*. at pg. 8. Finally, he claims that neither his refusal to see a medical provider nor a chart review ever affected his HIV medication renewal or reorder.

**IV. Summary Judgment Evidence**

Both Plaintiff and Defendants submitted summary judgment evidence. A review of both shows that Plaintiff's evidence mirrors portions of Defendants' submissions. In support of their motions, Defendants attached:

**Exhibit A:    Plaintiff's Relevant Grievance Records, with business record affidavit,**

**Exhibit B:    Plaintiff's Relevant Medical Records, with business record affidavit, and**

**Exhibit C:    Affidavit of Jessica S. Khan, M.D., with corresponding exhibits.**

Plaintiff's attachments to his complaint and summary judgment evidence are not supported by a business records affidavit, but the Court has considered them in the interest of justice.

### 1.  Plaintiff's Relevant Grievance Records

Both sets of evidence show that Plaintiff submitted a grievance on June 17, 2020 complaining that he did not receive his HIV medication on June 16 and June 17, 2020, (Dkt. #74, pg. 39; #79, pg. 17). In that medical grievance, Plaintiff explained that his HIV medications were not renewed on June 14, 2020, and that he last received his pills on June 14, 2020—requesting that prison officials renew his medications. The Court notes that several words, particularly in the "disposition" portion of the grievance, are crossed out.

On June 22, 2020, Plaintiff submitted a Step One grievance, number 2020139277, in which he explains that his previous grievance was never answered or returned, (Dkt. #72, pg. 25). He asserted that his HIV medications—Tivicay 80 mg, LamiVUDINE 300 mg, and Tenofovir DF 300—expired on June 14, 2020. He noted that he was without proper HIV medication for over one week, in violation of his doctor's orders and proper medical for chronic illnesses. Plaintiff further stated that a nurse, who was passing out medications on June 19, 2020, was made aware that he remained without his medication and remarked that "she was sorry but the medical staff[] would have to resolve[] this issue" of renewing his medications. Plaintiff requested renewal of his medication. Defendant Phillips, LVN, responded to Plaintiff's grievance on July 20, 2022, as follows:

> Record review shows you submitted a sick call on 6-22-2020 asking for medication renewals for your meds that expired 6-14-2020. A chart review was done on 6-24-2020

and medications were renewed. Compliance shows you received the medications on 6-25-2020. This grievance is resolved.

(Dkt. #72, pg. 26). Documentation attached to the grievance investigation confirms that Plaintiff sought medication renewals on June 20, 2020, through a sick-call request—and that Defendant Chastain, Nurse Practitioner, renewed all three medications on June 24, 2020. *Id*. at pg. 31; 43-44.

Plaintiff filed a Step Two grievance, number 2020139277, on July 29, 2020. *Id*. at pg. 23. He stated that Defendant Chastain's response failed to acknowledge "any wrong doing" from medical personnel reviewing his medical chart "a week and 4 days after" his medications expired, which constituted medical personnel "knowingly, maliciously, and intentionally causing substantial irreversible permanent harm." *Id*.

### 2. Relevant Medical Records

The summary judgment evidence reveals that Plaintiff signed a "Refusal of Treatment or Services" on January 18, 2020, at the Beto Unit for an appointment with a medical practitioner for a physical exam, (Dkt. #74, pg. 33). The document shows that medical personnel informed Plaintiff that by refusing treatment, his "condition may worsen, death may occur, and conditions may go undiagnosed." *Id*. Plaintiff specifically signed the refusal document. Plaintiff's medical record for January 18, 2020, illustrates that medical personnel determined a follow-up was necessary in six months. *Id*. at pg. 35.

Furthermore, as mentioned, Plaintiff submitted a sick-call request on June 20, 2020, requesting a renewal of his HIV medications:

**TEXAS DEPARTMENT OF CRIMINAL JUSTICE**
**HEALTH SERVICES DIVISION**
**SICK CALL REQUEST**

| | |
|---|---|
| **PART A:** (To be completed by offender) | Date: 6-20-20 |
| Offender's Name: Philippe Padieu | TDCJ No.: 1579307 |
| Work Assignment: | Work Hours: |
| Wing No: N - 3 - 22 B     School Hours: Tree Data Processing | |

Service needed:  ☑ Medical  ☐ Dental  ☐ Mental Health  ☐ Other: _____
Reason for Health Services Appointment: I need my HIV meds. They expired 6-14-20
I need an appointment for Renewal

How long have you had this problem?     Hours: _____     Days: _____

> "In accordance with state law, if this visit meets offender annual health care services fee criteria, I understand that my trust fund account may be charged a $100 health care services fee. I also understand that I will be provided access to health care services regardless of my ability to pay this fee."

_____
***Signature of Offender***

**RECEIVED**
**JUN 2 2 2020**

Part B: (To be completed by medical personnel – Do not write below this line
Medical Reply: _____

_____           _____
Medical Staff Member's Signature                              Date

HSA – 9 (Rev. 2/12)

(Dkt. #74, pg. 3). His medical records confirm that medical personnel reviewed his medical chart on June 24, 2020, four days later, and renewed all three of his medications. *Id.* at 5-6. The records further demonstrate that Plaintiff received his medication for Tenofovir DF 300 on June 14, 2020, and then again on June 25, 2020, once they were renewed.

Plaintiff's medical records further show that Defendant Egan, physician, ordered blood work in October 2020. The results, dated October 12, 2020, reveal that Plaintiff's HIV was not detected and his CD4 count was a 524 or 34%, *id.* at pg. 76-77, which Dr. Khan attests is "considered adequate to avoid any unusual or opportunistic infections." Another blood test, conducted on November 9, 2021, demonstrated that his HIV virus was "detected, but not quantifiable," which indicates that the virus "concentration is below the lower limit of quantitation of the assay," (Dkt. #74, pg. 94). Dr. Khan explains in her affidavit that "detected, not quantifiable," means that "there was HIV virus detected in the sample, but below the limits of the laboratory machine's ability to count it." *Id.* at pg. 44. Plaintiff's CD4 count was again within the normal limits for that blood draw.

Plaintiff's blood was evaluated again in April 2022. The HIV virus was not detected, and his CD4 count remained within the normal limits at 36%, (Dkt. #74, pg. 107). He signed another "Refusal of Treatment or Services" on July 12, 2022—refusing both medications and a physical exam. *Id*. at pg. 113. A July 2022 blood draw revealed that the HIV virus was not detected, and CD-4 count was at 37% percent, within the normal limits. *Id*. at pg. 115.

According to Dr. Khan, who reviewed Plaintiff's medical records from January 1, 2020, through July 31, 2022, Plaintiff's medical care was "conscientious and performed within the standard of care." *Id*. at pg. 46. HIV patients are monitored by medical providers in the Infectious Disease-HIV Clinic and/or the Chronic Care Clinic (CCC). She attests that when medical personnel became aware that his medications had expired, "a chart review was conducted, and his HIV medication was reordered." *Id*.

Plaintiff was scheduled in the CCC for January 18, 2020, and presented at the clinic—but signed a refusal form for his appointment. Dr. Khan explains that because of his refusal, "his HIV medication was not renewed at that time" and policy dictates that "medications for chronic medical conditions should not be renewed if the patient is not seen in a chronic care clinic." *Id*. at pg. 46. She cites TDCJ's Chronic Care Program Manual and Pharmacy Procedures, effective in 1995, which provides that "[m]edications for chronic medical conditions should not be reviewed if the patient is not seen in a chronic care clinic as defined in CMHC Policy G-51.10, Chronic Care Program," (Dkt. #74, pg. 130).

Even though Plaintiff missed a few doses of his HIV medications, which Dr. Khan explains is not recommended, Plaintiff "had poor medication compliance long before June 2020" and that his HIV and CD4 testing—both before and after June 2020—show that his HIV was well-controlled. His medical records show no ill-effects from failing to take his medications on June

15,2020 through June 24, 2020. Specifically, Dr. Khan attests that "[d]espite missing ~10 days of his medications per month (based on 63% compliance on record), his immune system, together with the potency of the medications, were sufficient to control the HIV infection in the body, such that his HIV Viral Load was suppressed and his CD4, a[n] indicator of his immune function, remained high and stable." *Id*. at pg. 47.

## V. Legal Standards

A court shall grant summary judgment only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. In determining whether there is a genuine dispute of a material fact, the court must examine the evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. *See S.E.C. v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1994). Summary judgment is appropriate "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted). "Material facts are those that might affect the outcome of the suit under the governing law." *Crostley v. Lamar Cnty., Tex.*, 717 F.3d 410, 422 (5th Cir. 2019) (internal citation and quotations omitted).

The United States Court of Appeals for the Fifth Circuit has held that summary judgment disposition is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions. *See Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir. 1987). It is not the function of the trial judge—in ruling on a motion for summary judgment—to weigh the evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence. *Id*. at 567 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

Mere disagreement between the parties as to the facts does not preclude summary judgment. *See Anderson*, 477 U.S. at 247-48 ("By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."). Conclusory and self-serving statements, without more, will not defeat a motion for summary judgment—particularly when the motion is supported by plentiful contrary evidence. *See Smith v. Southwestern Bell Tel. Co.*, 456 F. App'x 489, 492 (5th Cir. 2012). Moreover, while the movant has the burden on showing no genuine issue of material fact exists, the burden "may be discharged by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

**VI. Discussion and Analysis**

The Court understands that Plaintiff maintains that Defendants acted with deliberate indifference to his serious medical needs by failing to renew his HIV medications when they expired on June 14, 2020—causing him to be without his medications for eleven days until they were renewed. He argues that, as a result of this delay, his HIV viral load was detectible and his CD4 count was such that he could transmit the virus. He also contends that the delay stemmed from Defendants' retaliation. However, a review of the summary judgment evidence, viewed in the light most favorable to Plaintiff, shows that the evidence before the Court could not lead to different factual findings and conclusions. In other words, summary judgment in favor of the Defendants is appropriate.

A. Deliberate Indifference to a Serious Medical Need

Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under section 1983. *See Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 835 (1994), the Supreme Court noted that deliberate indifference involves more than mere negligence. The Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id*. at 837.

The Fifth Circuit has discussed the high standard involved in demonstrating deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id*. Furthermore, the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

*Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). In the medical care context, "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does an inmate's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Moreover, "medical records of sick calls, examinations, diagnosis, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th

Cir. 1995) (affirming the district court's summary dismissal of Banuelos's lawsuit based on his medical records rebutting his claim of medical deliberate indifference).

Additionally, the Fifth Circuit issued a published opinion, affirming this Court's granting of summary judgment in a separate case in favor of defendants within regard to a plaintiff's claim of medical deliberate indifference. *See Petzold v. Rostollan*, 946 F.3d 242 (5th Cir. 2019). Petzold, a diabetic federal prisoner, injured his ankle while exercising. *Id.* at 245. The Fifth Circuit outlined the pertinent facts as follows, with footnotes to citations omitted:

> One Friday in October 2013, Petzold injured his ankle. He quickly iced it, but it swelled, and the pain became "excruciating." On his walk to the daily insulin-dispensing line, Petzold told a correctional officer about his injury. Petzold also claims that Mike Rostollan, a prison nurse, passed Petzold in the hallway and commented on his limp.
>
> Petzold waited in line for insulin. When it was his turn, he asked Rostollan, the dispensing nurse, to evaluate his ankle and render aid after the insulin line concluded. Rostollan, without looking at Petzold's ankle, told Petzold to "purchase some" pain medication—though the commissary was closed for the weekend—or "find some [pain medicine] on the unit," and "put some ice on it."

*Id.* at 246. A few days later, Petzold was treated by another nurse, with X-rays showing that his ankle was slightly fractured. *Id.* at 247. Petzold then filed a complaint alleging that Defendant Rostollan acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment.

After explaining that the deliberate indifference standard is extremely high, the Fifth Circuit found that Defendant Rostollan's actions and statements did not constitute deliberate indifference. Specifically, the Court stated reasoned:

> As a matter of law, Rostollan's instruction for Petzold to ice his ankle was medical treatment. It was medical treatment because it was medical advice that Petzold could, and did, effectuate. Petzold argues that the prescribed "treatment" was not based on an evaluation, lacked specific instructions, and was ineffective. But, because medical treatment was provided, even if it was negligent, disagreed-with, and based on a perfunctory and inadequate evaluation, it was not denied. Under governing precedent,

imperfect treatment does not equal denied treatment. And a disagreement with recommended treatment is generally insufficient to show deliberate indifference.

*Petzold*, 946 F.3d at 250-51.

It is well-settled that mere disagreement with a course of treatment or dissatisfaction with medical treatment does not constitute deliberate indifference under the Eighth Amendment. *See Gobert*, 463 F.3d at 346; *see also Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016) ("Blank's desire to see Dr. Sandknop more often amounts to a disagreement over his treatment, which, as discussed *supra*, does not rise to the level of deliberate indifference."). A delay in medical care or treatment can only constitute an Eighth Amendment violation if there has been deliberate indifference that *results in substantial harm*. *See Rogers v. Boatright*, 709 F.3d 403, 410 (5th Cir. 2013); *Irby v. Hinkle*, 2023 WL 2524447, at *4 (5th Cir. 2023). A delay in medical care or treatment for non-medical reasons may constitute deliberate indifference. *See Thibodeaux v. Thomas*, 548 F. App'x 174, 175 (5th Cir. 2013) (per curiam) (concluding that the plaintiff stated a colorable claim of deliberate indifference where his surgery was delayed because prison officials sent him to the wrong facility and failed to file the appropriate paperwork).

Here, the summary judgment evidence shows that Defendants did not act with deliberate indifference to Plaintiff's serious medical needs. Plaintiff's extensive medical records, showing consistent and active treatment for his HIV condition, refute any claim that Defendants intentionally refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct. *See Gomez v. Hughes Unit UTMB Health Prov.*, 784 F. App'x 279, 279 (5th Cir. 2019) (unpublished) ("The record shows that Gomez had medical appointments with the defendants; one of the defendants prescribed medication for him. Additionally, there is nothing in the record to show that the defendants exhibited a wanton disregard for any serious medical needs."); *Freeland v. Tarrant Cnty., Tex.*, 789 F. App'x 406, 409 (5th Cir. 2019)

(unpublished) ("This course of medical treatment does not clearly evince wanton disregard for Freelance's serious medical needs. Freeland's alcohol-withdrawal symptoms were monitored and assessed, and he subsequently received medical attention, treatment, and medication.").

The delay of approximately eleven days in which Plaintiff was without his medications does not present a constitutional violation because there was no deliberate indifference resulting in substantial harm. Specifically, the record shows that while Plaintiff's HIV medications expired on June 14, 2020, prison officials renewed his medications on June 24 and Plaintiff received his medication on June 25, 2020. Plaintiff has not shown that he suffered substantial harm during the delay—as, contrary to his contentions, his HIV viral load was undetected and his CD4 count remained within normal limits. *See, e.g.*, *Grumbles v. Lumpkin*, 706 F. App'x 818, 819-20 (5th Cir. 2017) (explaining there was no evidence that any delay in receiving an ultrasound resulted in any substantial harm, as the ultrasound revealed no abnormalities and no summary judgment evidence that his liver was damaged); *Witt v. Bell*, 551 F. App'x 240, 241 (5th Cir. 2014) (Mem) (two-week delay in receiving an X-ray did not show substantial harm, as "Witt was observed to have ambulated from the clinic without difficulty following the x-ray and despite the fracture.").

Furthermore, while Plaintiff insists that he suffered permanent kidney and bone damage, the summary judgment is devoid of any indication that he suffered these damages. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (explaining that conclusory allegations are not competent summary judgment evidence and will not defeat a motion for summary judgment.). Without supporting evidence, this claim does not defeat Defendants' motion. Plaintiff specifically notes in his response to Defendants' motion for summary judgment, (Dkt. #79, pg. 8), that Defendants delaying his medications for eleven days "could/would" alter or change his CD4 count to detectable and "cause permanent kidney and bone damages."

The Court recognizes that pain experienced during a delay in medical treatment may constitute deliberate indifference; however, Plaintiff does not specify that he suffered pain—constituting substantial harm—during the eleven-day delay other than his regurgitation of legalese (i.e., "pain and suffering, wanton unnecessary pain") without any supporting factual details about the location, severity, or duration of any alleged pain, (Dkt. #25 generally) (Plaintiff's amended complaint). Plaintiff did not assert that he was in pain within his June 17, 2020, medical grievance or in his June 20, 2020, grievance. *See Lechuga v. Southern Pacific Trans. Co.*, 949 F.2d 790, 798 (5th Cir. 1992) (explaining that conclusory and unspecific statements do not provide facts that will counter summary judgment evidence "and as such are inadequate to raise a genuine issue of fact"); *BMG Music v. Martinez*, 74 F.3d 87, 91 (5th Cir. 1996) (explaining that a "conclusory, self-serving statement by defendant was insufficient to create a triable issue of fact.").

Regarding Plaintiff's refusal of treatment on January 18, 2020, the summary judgment evidence illustrates that Plaintiff refused a physical from a medical provider on that day, at which point he was warned that his refusal could cause his condition to worsen, cause death, or cause an illness to go undiagnosed. He was then scheduled a follow-up within six months. While Plaintiff insists that his refusal of treatment is irrelevant, the summary judgment evidence shows that medical personnel within TDCJ do not renew medications for chronic care patients if the patient is not seen in a chronic care clinic. Given Plaintiff's refusal of treatment on January 18, 2020, his HIV medications were not renewed when they expired on June 14, 2020. Accordingly, the delay in prescription renewal is not attributable to Defendants.

Consistent with his pleadings here, the medical records show that Plaintiff complained about—and ultimately refused to take—his Tenofovir DF 300 prescription because he believes it dangerous based on pending litigation in California. Plaintiff's pleadings and medical records

demonstrate that he believes, without supporting evidence, he suffered kidney and bone damage from his Tenofovir DF 300 medication given the litigation in California. But conjecture alone will not defeat a properly supported motion for summary judgment. *See, e.g.*, *Crawford v. City of Houston Tex.*, 260 F. App'x 650, 652 (5th Cir. 2007). Similarly, bare self-diagnoses are insufficient without medical evidence verifying that the condition exists—and, consequently, do not create a triable issue of fact. *See Aswegan v. Henry*, 4 F.3d 461, 465 (8th Cir. 1995) *accord*, *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994) (a prisoner's self-diagnosis alone will not support a medical conclusion); *Wesson v. Oglesby*, 910 F.2d 278, 281 (5th Cir. 1990) (explaining that conclusory "assertions of a serious medical condition" are insufficient to verify that a serious medical condition exists).

Plaintiff cites *Murphy v. Bray* from the Southern District of Ohio in support of his deliberate indifference claim. However, *Murphy* is wholly distinguishable from Plaintiff's case and is not persuasive authority. In *Murphy*, a prisoner was confined for a total of nine days in 1997. 51 F. Supp. 877, 879 (S.D. Ohio 1999). The prisoner was diagnosed with AIDS in 1992 and took a variety of prescription medications; he informed an officer upon his arrival that he was HIV-positive and took several prescriptions, at which point the officer informed medical personnel. *Id*. On November 7, 1997, a doctor at the facility spoke with the prisoner and obtained the names of his treating physician, and remarked in the prisoner's chart that it permissible to "have all of his medication brought from home and to start them as directed," and to obtain a list of the medications. *Id*.  The prisoner called a friend and told him to bring the medications to the facility—but a guard would not allow the friend to do so. The facility had a written policy specifically prohibiting prisoners from having prescription medication brought from their homes. *Id*.

The prisoner-plaintiff did not receive his medications during his entire incarceration, from November 5, 1997, through November 13, 1997, for a total of seven days. Plaintiff maintained that that the defendant doctor "allowed plaintiff to obtain the medications from home because a custom had developed that sanctioned this process," and that the defendants knew a custom had developed in direct contradiction of the written policy—and that the rules and implementation were not uniformly defined. *Id*. at 879-80. The prisoner-plaintiff produced the depositions of two defendants who testified that a custom developed allowing prisoners to bring medications from home, but also explained incidents occurred in which family members brought prescription medications to the facility but were refused. *Id*. at 882. The court explained the problem as follows: "In other words, while one corrections officer would allow medications to be brought to an inmate, another would not." *Id*. at 880. Ultimately, the district court denied the defendants' motion for summary judgment—finding that the prisoner-plaintiff raised "a genuine issue of material fact as to whether Defendant Luis knew of and disregarded an excessive risk of harm presented to plaintiff by the custom" at the facility. *Id*. at 883.

Here, however, *Murphy* is inapplicable to Plaintiff's case. *Murphy* focused on the denial of prescription medications based on a custom that was at odds with the written procedures and was not uniformly applied—namely, that officials would sometimes allow prescriptions from home and sometimes would not. Plaintiff here presents no evidence demonstrating that the delay in receiving his medication stemmed from an unwritten custom that contradicted written policies or that policies were not uniformly implemented. In fact, the summary judgment evidence in this case illustrates that Plaintiff's medications were not renewed because he refused a Chronic Care appointment, which dictates that medical personnel should then not renew prescriptions. Plaintiff proffers no evidence showing that this policy of foreclosing renewals for lack of a Chronic Care

visit was not uniformly applied or that another policy/custom was used in his specific case contradicting the written policy.

As a final matter, personal involvement is an essential aspect of a section 1983 cause of action. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983); *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976) (explaining that there must be an affirmative link between injury and the conduct of defendants). The Fifth Circuit has specifically held that a plaintiff must specify the personal involvement of each defendant in a section 1983 proceeding and "cannot make generalized allegations, nor can he support a claim based on any vicarious liability theory." *Murphy v. Kellar*, 950 F.2d 290, 292 n.7 (5th Cir. 1992).

Here, Dr. Khan explains in her affidavit that many of the named Defendants—Sizemore, Phillips, and Green—have no authority to prescribe medications. Specifically, she attests that Defendant Sizemore is the former Senior Practice Manager at the Beto Unit, who does not have authority or a medical license to order medications, (Dkt. #74, pg. 44-45). Similarly, Defendants Phillips and Green, as Nurse Manager and Certified Medication Aide, do not have the authority or medical licensure to reorder medications. *Id*. at pg. 45; 46.

Moreover, with respect to Defendant Phillips and Egan, the summary judgment evidence reveals only that Defendant Phillips responded to one of Plaintiff's prison grievances and that Defendant Egan merely signed Plaintiff's medical chart after he refused his appointment on January 18, 2020. The summary judgment does not reveal that Defendant Egan was involved in Plaintiff's medical care in June 2020; signing grievances is not enough to show she was involved in the delay of his medications. *See, e.g.*, *Criollo v. Milton*, 414 F. App'x 719, 721 (5th Cir. 2011) ("This argument lacks merit, however, because Criollo has not shown how either Pace, as practice manager [whose duties include submitting responses to prisoner grievances] had any role in his

17

medical treatment."). Consequently, Plaintiff failed to demonstrate that Defendants Sizemore, Phillips, Green, and Egan were personally involved in the delay of his medications.

The summary judgment evidence, viewed in light most favorable to Plaintiff, reveals that Defendants did not act with deliberate indifference that resulted in substantial harm. Plaintiff's claims of deliberate indifference based on a delay in receiving medications should be dismissed.

B. Retaliation

Plaintiff further contends that the delay in renewing his medications stemmed from retaliation for his filing prison grievances. *See Keenan v. Tajeda*, 290 F.3d 252, 258 (5th Cir. 2002) ("The First Amendment not only directs limits on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected speech activities.") (quoting *Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir. 1999)).

Federal Courts view prisoners' retaliation claims "with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Woods v. Smith*, 60 F.3d 1161, 1164-66 (5th Cir. 1995). To prevail on a section 1983 claim for First Amendment retaliation, Plaintiff must show that "(1) [he] was engaged in a constitutionally protected activity[;] (2) the defendant's actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity[;] and (3) the defendant's adverse actions were substantially motivated [by] the constitutionally protected conduct." *McLin v. Ard*, 866 F.3d 682, 696 (5th Cir. 2017) (citing *Keenan*, 290 F.3d at 259). The second element requires some showing that "the plaintiff's exercise of free speech has been curtailed." *Keenan*, 290 F.3d at 259.

The Fifth Circuit recently found that in order for a prisoner to succeed on a retaliation claim, the prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to

retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *See Streater v. Davis*, 2022 WL 10362714, at *1 (5th Cir. Oct. 18, 2022) (quoting *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)). To show causation, "an inmate must allege the violation of a constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident … would not have occurred." *Ancar v. Robertson*, 2022 WL 1792535, at *3 (5th Cir. June 2, 2022) (quoting *Woods*, 60 F.3d at 1166).  In *Streater*, the Court determined that Streater failed to allege causation because, in part, "he failed to allege facts to allow the inference that he was transferred because of his lawsuit." *Id.*

Here, Plaintiff failed to demonstrate any retaliation based on the delay in receiving his medications. Plaintiff failed to show that any Defendant violated his Eighth Amendment rights because there was no deliberate indifference resulting in substantial harm. Moreover, an alternative explanation exists for the medication delay: Plaintiff's refusal of treatment as a chronic care patient. The summary judgment evidence reveals that longstanding TDCJ policy regarding the Chronic Care Clinic is that medications should not be renewed if a patient is not seen/evaluated in the Clinic. Consistent with that policy, medical personnel did not renew Plaintiff's medications when they expired on June 14, 2020 because he refused treatment on January 18, 2020 and his follow-up was scheduled for six months later, sometime in July 2020. Accordingly, Plaintiff neither established a specific constitutional right that was violated nor causation—and his retaliation claim therefore should be dismissed.

C. Failure to Train and Supervise

Plaintiff insists that Defendants are liable under a supervisory-liability theory and/or for the failure to train subordinates. The doctrine of respondent superior, however, does not apply to section 1983.  *Williams v. Luna*, 909 F.2d 121, 123 (5th Cir. 1990); *Monell v. Dep't of Social*

*Servs.*, 436 U.S. 658, 691 (1978).  Under 42 U.S.C. § 1983, supervisory officials are not liable for a subordinate's actions on any vicarious liability theory.  In fact, the Supreme Court has held that the term "supervisory liability" is actually a misnomer since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  *See Iqbal*, 556 U.S. at 677. In *Iqbal*, the Supreme Court rejected an argument that government officials may be held liable because they merely had knowledge or acquiesced in their subordinate's misconduct.  *Id*.  As a result of *Iqbal*, other courts have questioned whether supervisory liability remains an option at all in section 1983 cases.  *See, e.g.*, *Dodds v. Richardson*, 614 F.3d 1185, 1194-95 (10th Cir. 2010); *Parrish v. Ball*, 594 F.3d 993, 1001 n.1 (8th Cir. 2010).

Under current Fifth Circuit jurisprudence, a supervisor may only be held liable if one of the following exists: (1) his personal involvement in the constitutional deprivation, (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations, or (3) the supervisory official implements a policy that itself is a repudiation of civil rights and is the moving force of the constitutional violation.  *See Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008); *see also Pena v. City of Rio Grande City*, 879 F.3d 613 (5th Cir. 2018) (explaining that a plaintiff in a section 1983 case establishes supervisor liability "if (1) [the supervisor] affirmatively participates in the acts that cause the constitutional deprivation, or (2) [the supervisor] implements unconstitutional policies that result in the constitutional injury.") (internal citation omitted).

Here, Plaintiff has not pleaded a specific policy or connection between any of these defendants and any purported resulting constitutional violation.  While he states that he never had a problem in receiving his HIV medications before, he neither identified a constitutional violation—as there was no deliberate indifference under this record—nor a policy that is the

moving force of any constitutional violation. Accordingly, any claim for supervisory liability should be dismissed.

Likewise, Plaintiff's claims that supervisor Defendants failed to train their subordinates fails. The summary judgment evidence reveals no constitutional violation. A claim under section 1983 concerning the failure to train or supervise requires the Plaintiff to create a dispute of fact that (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference. *See Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 397 (5th Cir. 2017); *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).

Importantly, if the alleged conduct stemming from the failure to train and/or supervise did not violate a constitutional right, the inquiry ends immediately—as relief under section 1983 requires demonstrating that a constitutional violation occurred. *See Allison v. Kyle*, 66 F.3d 71. 73 (5th Cir. 1995) ("[N]either habeas or civil rights relief can be had absent the allegation by the plaintiff that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States."); *see also Lytle v. Bexar County, Tex.*, 560 F.3d 404, 410 (5th Cir. 2009). This claim should be dismissed.

D. Qualified Immunity

Defendants seek qualified immunity. The defense of qualified immunity protects government officials performing discretionary functions from "liability for civil damages insofar as their conduct does not violate clearly established rights which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009). "Qualified immunity gives government officials breathing room to make

reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

To demonstrate the inapplicability of the qualified immunity defense, the plaintiff must satisfy a two-prong test. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). The first prong is whether "the challenged conduct, viewed in the light most favorable to the plaintiff, would actually amount to a violation of [constitutional or] federal law." *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (citation omitted). The second is "whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004) (citations omitted). A court may consider the two-pronged inquiry in any order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

When applying the second prong, the court examines whether "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *al-Kidd*, 563 U.S. at 741 (internal alterations and quotation marks omitted). The Fifth Circuit has observed that an official:

> does not lose qualified immunity merely because a certain right is clearly established in the abstract. It is clearly established that the government may not deny due process or inflict cruel and unusual punishments, but those abstract rules give officials little practical guidance as to the legality of particular conduct. Qualified immunity should not be denied unless the law is clear in the more particularized sense that reasonable officials should be on notice that their conduct is unlawful.

*Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (internal quotation marks omitted).

Here, Plaintiff failed to establish a constitutional violation. He therefore failed to clear the first hurdle. He has not demonstrated that any named Defendant acted with deliberate indifference

22

to his serious medical needs. Moreover, even if he had alleged a constitutional violation, he failed to show that any Defendant acted unreasonably. As Defendants highlight, Plaintiff failed to allege any facts that would indicate any other reasonable medical provider in Defendants' positions would have assessed the situation and acted differently. Because Plaintiff has not demonstrated a constitutional violation, Defendants are entitled to qualified immunity.

<u>RECOMMENDATION</u>

For all of these reasons, it is recommended that Plaintiff Padieu's motion for summary judgment, (Dkt. #70), be denied and Defendants' motion for summary judgment, (Dkt. #72), be granted. Plaintiff's remaining claims in this lawsuit should be dismissed with prejudice.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto Ass'n.*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections).

So ORDERED and SIGNED this 1st day of May, 2023.

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE

23